May it please the Court. My name is Quincy Sauer and I represent the appellant William Bridge. Your Honors, the issue before the Court in this case is whether a reasonable jury could find that New Holland Logansport constituted an employer under the Age Discrimination in Employment Act. This Court should reverse the District Court's decision granting summary judgment for two reasons. First, New Holland Logansport itself had an employment relationship with at least 20 employees in the relevant time, which was 2010 and 2011. And second... What control did it exercise over Melinda Strader, Stacey Connor and or Bob Kennedy? Your Honor, the control that was exercised was exercised by Jim Streeter. Jim Streeter's role... But by New Holland Logansport or by New Holland Rochester was indistinguishable. It was impossible to tell which hat he was wearing because he controlled both companies. Could New Holland Logansport hire or fire any of these three? Could it determine their salaries or direct them in their day-to-day activities? Yes, Your Honor. In Jim Streeter's deposition, which is the docket 26-1 on page 11 to 12, he talks about the authority that Mike Stevenson had to fire and hire employees at New Holland Logansport. Mr. Stevenson did have authority to hire and fire anybody who was doing work at New Yes, Your Honor. Melinda Streeter was doing work. She was doing the payroll services for New Holland Logansport and New Holland Rochester. So Mr. Stevenson, according to Mr. Streeter's testimony, had the authority to terminate her employment with New Holland Logansport if he deemed fit. The reality is is that Jim Streeter... But the question I'm trying to get at is the other way. I have no problem seeing her as under the authority of the Rochester company, but I don't see how the Logansport company has the authority to hire or fire or do anything. She just parachutes in along with the other two and does these things. There's a wisp of evidence about invoices with respect to, I guess, Connor, but they do seem to be separate companies. They're different kinds of corporations. They do have overlapping ownership. That's not at all uncommon. They have, you know, similar types of businesses. They share this website, but they file separate tax returns. They have separate bank accounts, and I just don't see how when all is said and done, we can collapse them into one company. Yes, Your Most Telling Fact is that Mike Stevenson, who was operations manager at Logansport, had Mr. Kennedy, Bob Kennedy, attend the EEOC mediation in this case. And this case was brought solely against New Holland Logansport. Mr. Kennedy attended the mediation as one of the corporate representatives, and that shows the control that Logansport has over Rochester. Mr. Kennedy was the human Does the evidence show that Logansport commanded Kennedy to be there, or just that Kennedy comes on request? What does it show? Your Honor, we don't have facts determining exactly why Kennedy was present, but I've never attended a mediation with somebody who is outside of the company coming as part as a corporate representative, unless they're from an insurance company. Mr. Kennedy's presence shows that he was controlled by New Holland Logansport and jointly employed. At a minimum, this is a factual issue that should be presented to the jury to determine whether there was enough control by New Holland Logansport over these three New Holland Rochester employees. What evidence is there in the record tending to establish that Strader was acting as a director of New Holland Register, Rochester, when he directed, instructed Stevenson to terminate Bridge? He certainly could have given that instruction in his separate role as a director of New Holland Logansport, couldn't he have? Yes, Your Honor, we have the burden of proof. I want to just throw that thought in there, because if the evidence just doesn't permit resolution of the issue, it's not a jury question. Yes, Your Honor, however, there's more evidence on the other side suggesting that Mr. Strader was acting in his capacity as the operations manager at New Holland Rochester. Everything that Mr. Strader did was connected to Rochester. Your Honor, there's evidence that ordinarily the decision to hire and fire people at Logansport was made by Mike Stevenson. Mike Stevenson did not want to terminate William Bridge. There's evidence that he objected to it, but Mr. Strader, in his role as the operations manager at Rochester, directed Mr. Stevenson, who ordinarily makes these decisions, to terminate Mr. Bridge's claim. He certainly ordered, but you've inserted this in his role as director of Rochester, and I think we're trying to get at the question, why wasn't it in his role as a director of Logansport, and by far the most substantial owner? And yes, he has a difference of opinion about whether Bridge should be kept on, but he's wearing his Logansport hat. Your Honor, the actual meeting occurred at Rochester. Mr. Strader called Mr. Stevenson to his office at Rochester and then told him that this was the Monday before Mr. Bridge was terminated, that he needed to terminate Mr. Bridge the next day. The simple fact that Mr. Strader has a role, he is an actual employee of Rochester, he's not just an owner, he is the operations manager at Rochester, makes it more likely that he was acting in his capacity as the operations manager of Rochester, rather than simply an owner. There was no board of directors meetings that was held at Logansport in order to make this decision as to whether to terminate Mr. Bridge or not. Would you argue that all seven New Holland companies listed on the New Holland Rochester website should be treated together as a single enterprise, or do you think there's something special about the relationship between New Holland Rochester and New Holland Logansport? Your Honor, we really limited the discovery in this case to the relationship between New Holland Rochester and New Holland Logansport because New Holland Rochester, it has over 20 employees at that location alone, and that's basically the corporate headquarters. So showing that New Holland Rochester and New Holland Logansport were sufficiently connected would be enough to prove that New Holland Logansport constituted an employer under the Age Discrimination and Employment Act. So I frankly don't have all of the facts available to answer whether the other question should, or whether the other corporation should all be considered one company. But the reality is, is that the human resources manager at New Holland Rochester has to comply with the Age Discrimination Act, Title VII, the Americans with Disabilities Act, with all of the employees at the New Holland Rochester location. New Holland Logansport definitely has to comply with Title VII, definitely has to comply with the Americans with Disabilities Act, and the same human resources manager who's helping New Holland Rochester comply with the Age Discrimination Act is also overseeing human resources at New Holland Logansport. So we see... Is it unusual to outsource human resources functions outside of the company to another entity, and does that make that other entity part of the original company? No, Your Honor, it's not unusual to contract out human resources functions to a company that actually specializes in providing human resources functions. Why does it have to be a specialist company as opposed to simply, you know, a limited joint venture with another company where a couple of employees are used? These are small, you know, family-owned companies after all. Yes, Your Honor, if there was actually evidence in the record showing that New Holland Logansport paid for these services, the analysis might be different, but there's no evidence that any invoices were actually sent from New Holland Logansport to New Holland Rochester for its payroll services, for its human resources services, or for its accounting services. So the question is, what are these people? If they're not employees of New Holland Logansport, are they volunteers? Are they... Even the respondent has conceded that New Holland, sorry, these three employees are not independent contractors. They claim that they are employees, and they're clearly doing work at New Holland Logansport. So we think that these three employees should be counted as employees for the purposes of the Age Discrimination Act. Thank you. Thank you. Mr. Hardman. May it please the Court, my name is Lyle Hardman and I represent New Holland Logansport. Your Honors, there isn't any evidence adduced by Mr. Bridge to that the three of them, or Stacey Connor, are joint or co-employees of New Holland Rochester or New Holland Logansport. See, I'm interested that you start with that theory, because of all the theories floated here, the joint employee theory was the one I thought needed exploration. It's a little odd to think that the three of them, on a purely gratuitous volunteer basis, would have been the like. And, you know, if New Holland Logansport is using them for these critical functions, and they're not independent contractors, then why aren't they properly understood as joint employees with the Rochester company? And the reason for that, Judge Wood, is the first and foremost test used by this circuit in determining whether or not someone is an employee of an entity is control. Exactly. So, you have to be saying that New Holland Logansport, an independent company, has absolutely no control over who does its human resources and who does its payroll, and thus they're just stuck with these people. That almost makes it seem like a single entity. I'm not sure that's a good theory for you. No, Your Honor, and I disagree with you. The control aspect is, Ms. Sowers mentioned Mr. Stevenson's ability to fire or hire. What we don't have is any evidence in the record, one way or the other, but certainly no evidence that Mike Stevenson had the ability to hire or Stacey Connor. What we do have is evidence that New Holland Rochester and New Holland Logansport and the other entities engage in those economic efficiencies, which Judge Posner said and Katie v. Papa are appropriate, but do not render them joint enterprises for terms of ADA. The main point about Papa is that this needs to be understood in a functional way, that all of these various factor tests don't get at the essence of it, but if New Holland Logansport felt, say, that they needed somebody who could devote more time to their human resources operation than this shared arrangement was making possible, it seems to me they could have said, if they really are a separate company, we don't want to use I'm forgetting who did what, you know, but we don't want to use the Rochester person who does human resources, so they could fire them. They can assign tasks. They can say we need to hire a new person to sell tractors or whatever they need to hire for. Why isn't this the kind of control, they're not exclusive employees, they don't look like independent contractors, but I still I'm not sure why they're not joint employees, given the lack of compensation, given the lack of any other understanding. Well, Your Honor, that's multifactorial, but none of the five elements here applicable to establishing whether or not someone is a co-employee, there's no evidence on any of them. There is no evidence by Mr. Bridge about the degree of control exercised over them by New Holland Rochester or New Holland Logansport. There is no evidence as to the amount of time that they were employed there. There is no... Don't we know, like, about a day a week? So... That's for... Okay, Melissa, Melinda Strater is at Rochester, but she manages payroll for Logansport. Kennedy does human resources for both. He spends about a day a week at Logansport. Connor's an accountant. She's back and forth, probably can do a lot by email, if I were to guess, you know. Correct, and so of the five factors, there isn't any evidence as to any of them. What's... I'm not sure I agree with that, but anyway, I mean, you can say that if you want, but it may not make it true. The only evidence that Mr. Bridge has in his declaration is that Bob Kennedy spent one day a week there doing HR matters at New Holland Logansport, as opposed to New Holland Rochester. I don't believe under Papa versus Katie, again, those economic efficiencies that Judge Posner talks about is a basis to conclude that New Holland Rochester and New Holland Logansport are joint enterprises. Well, no, but no, I wasn't going that far. I was just saying that this particular employee is doing something economically essential, that they're not an independent contractor. They're certainly not a full-time employee of the Logansport group, but they're not a full-time employee either at Rochester, since they're devoting some time to Logansport for no compensation. And Judge, first of all, there isn't any But second of all, the concern that I have, if we go down that path in holding them that they are joint employees, is aren't we eviscerating Papa versus Katie? No, I don't see why we'd be eviscerating it. Well, and I think we are because if we hold that a small business entity who is engaging in these economic efficiencies by having an employee do these HR functions or accounting functions or legal functions or what-have-you, are joint employees, how is that different than establishing that they're joint enterprises under the ADEA? Well, because it's an employee-by-employee inquiry, these are very fact-specific situations with these little companies, and we certainly don't want to say every member of the accounting firm to the small company. That would be not an accurate reflection of the economic realities. But on the other hand, Congress doesn't want these 20-employee thresholds or 15-employee thresholds or 50-employee thresholds to be evaded just by splintering out joint employees and not accounting them for anybody. That's true, and that's why they are counted as employees for New Holland Rochester. And speaking of specific facts, under Bridge's version of events, Stevenson did not want to obey Strader's directive to fire Bridge. And with that in mind, doesn't it become a question of fact whether Strader was acting as director of, you know, Logan's board or whether he was controlling Logan's board while in his capacity as the owner of Rochester? No, Your Honor, and it doesn't because again, Mr. Bridge has the burden of proof and there has been no evidence adduced that Jim Strader was wearing any hat other than his hat as owner and majority shareholder of New Holland Logan's port. But why isn't there an inference if he's an operations manager of Rochester when he does something that an operations manager would do, like fire somebody, he must be acting as an operations manager and he's only the operations manager for Rochester? Because Mr. Bridge was an employee of New Holland Logan's port. But could he have refused Strader's request to fire Bridge? Your Honor, that's a good question because oddly enough, Mr. Stevenson wasn't ever deposed. So there's nothing in the record as to that one way or the other. So is there anything in the record that would show us that Stevenson had the final authority to hire and fire at Logan's port? Well, yes, that is in Mr. Strader's deposition testimony. But that's the only evidence before the court and as someone... Well, and Mr. Strader saying or you know the evidence indicating that he was the one who directed Stevenson to do what he did. Mr. Strader understood this as a direction, Stevenson pushes back, but he does it. According to Mr. Bridge, that's correct, Your Honor, that's in Mr. Bridge's record. Well, Mr. Bridge was there when Stevenson called him in and fired him, so that much, yes, it's Mr. Bridge's testimony, but he was there. And I'm sorry, Your Honor, the question is? I'm just saying we have evidence in the record that shows that Strader directed Stevenson to fire somebody at the Logan's port location. Yes, but in this context, which is a summary judgment context, Mr. Bridge didn't deduce any evidence that Mr. Strader was acting on behalf of New Holland Rochester when that event purportedly occurred. Thank you, Your Honors. I see that my time is up. It's not, actually, you have another minute or so. But if you're desperate to sit down. You may sit down, if you wish. We never force people to talk to us. I am not Worth v. Tyre, Seventh Circuit case, this issue of which hat you wore in a context similar to what occurred here is important. There, in that case, which was a sexual discrimination case, the perpetrator owned a number of companies. And this circuit held that for the, when he committed the acts, he was acting in the capacity of the supervisor and owner of the complainant's employer, not as the owner and supervisor for the other companies that he owned, particularly U.S. Title. And this circuit held, it's not enough to say, yes, he wore multiple hats. You, the complainant, have to demonstrate evidence that he wore that hat when he committed that acts. And you, the complainant, haven't done that. Does it complicate the categorization of Melinda Strader as an employee of Logansport, if she were an employee of Logansport, that she's on the board? Logansport, do board members to be counted as employees of a company? Not necessarily, no. Even with small companies like this? It depends. There's a lot of mixture of functions. Which is exactly what you will have with small business entities, which is, again, why I think this court rejected the four-factor test and, as Judge Posner said, it's kind of useless in determining that threshold and instead adopted the three scenarios that we look at, the two of which are, do you pierce the corporate veil? Do those circumstances apply here? And secondly, was the alleged discriminatory act done by, or at the direction of, one of the affiliated entities? Right, and that, I think we've been focusing on the latter. We have, I mean, I realize it's in the briefs, the piercing analysis, which is fine. We can think about it, but it's the latter that has, I think, needed some exploration. And the other point I may want to make is, frankly, I think there's been a misstatement of facts, both in the briefs and here today. Ms. Sowers mentions that there's no invoices and, therefore, there's an inference that Mr. Kennedy, Ms. Streeter, and Ms. Connor weren't paid or that New Holland Rochester wasn't reimbursed for their services by New Holland Logansport. Mr. Streeter's testimony was he thought that it was Ms. Connor who... He has kind of an offhand reference at one point to, oh, I think we invoiced them. It's pretty casual. Correct, but there wasn't, the point I'm trying to make is, there wasn't any written discovery directed to us, so there weren't any invoices produced at all during the event to state because there wasn't, weren't any invoices, there must be an inference. There's no factual basis for it. Thank you, Your Honors. All right, thank you very much. Anything further, Ms. Sowers? Your Honors, when somebody does work for a company, they're either doing work as an employee, as an independent contractor, or a volunteer. There can't be a black hole where somebody disappears into and... Why was there no discovery into the invoices, to take Mr. Hardman's last point? Your Honor, this case was briefed on summary judgment before there was opportunity to do extensive discovery. I believe we took Mr. Stevenson's deposition and the defendant produced a large volume of documents under Rule 26, the initial disclosures, so we went through a large volume of documents in order to take a look at this issue. These cases are expensive to litigate, but if you look at all of the business invoices, there's 23 pages of invoices and there's no invoice from New Holland Logansport to New Holland Rochester. It would have been a pretty easy, I think, document to find in order to support the defendant's argument that they could have filed on summary judgment. I think the absence does indicate that there was no payment and there's never been an allegation that Mr. Kennedy or Mrs. Streeter were ever paid by Logansport for their services. This is limited to Stacey Connor is the disputed fact as to whether there was any payment for the services. Showing that these employees are joint employees of both companies does not require overturning PAPA. It's simply sending it to the jury for a factual determination and we think that's appropriate in this case. Thank you. All right, thank you. Thanks to both counsel. We'll take the case under advisement.